# Joe H. Stevison *et al.*

## *v.*

## John Earnest.

80　513
23a　329

80　513
138　577

80　513
139　519
40a　215

80　513
42a　254

80　513
56a　318

80　513
73a　511

80　513
181　163
85a　365

80　513
91a　⁶213

80　513
p93a　458

80　513
196　⁶453

80　513
199　⁶275

80　513
202　¹444
202　²444
202　⁸444

80　513
107a　⁵353

80　513
111a　⁹523

1. Record—*what is part of.* The papers of a cause, when filed, under our statute, become a part of the record, and transcripts are made by copying files and the orders of court as entered of record by the clerk.

2. Records—*proof of, in different courts.* While it is improper in the clerk of a court to allow the records or files in a cause to be taken from his custody to be used in the courts of a different county, yet if they are produced in another court and identified, they are admissible in evidence.

3. Pleading and evidence—*variance.* Where a declaration upon a replevin bond alleged that, the replevin suit coming on for trial, it was considered and adjudged that the plaintiff take nothing by his suit, and that the court awarded a return of the goods, etc., and gave judgment for the defendant thereon against the plaintiff for one cent damages and costs of suit, and the record produced showed simply a dismissal of the suit for failure to give security for costs and judgment for costs and return of the property: *Held,* that the variance was not material.

4. Where an instrument in writing or a record is not the foundation of the action, a variance is not material, unless the discrepancy is so great as to amount to a strong probability that it can not be the instrument or record declared on.

5. Replevin bond—*of the declaration.* The material facts to be alleged in a declaration on a replevin bond are, the termination of the replevin suit, and judgment for costs in the defendant's favor, and the order for the writ *retorno habendo.* It is wholly unimportant what led to that result, or in what phraseology it was declared.

6. Same—*right to question judgment in suit on bond.* A plaintiff in replevin, by suffering his suit to be dismissed, loses all right to contest the claim of the defendant in replevin to the property except that given him by the statute, which is to plead and prove his title to the property in mitigation of damages. He can not contest the validity of the judgment or execution under which the property was taken.

7. Same—*proof when defendant pleads title, etc.* Where a party's goods have been seized under execution against another, and he replevies the same, and his suit is dismissed with *retorno,* and suit is brought upon his bond, and he pleads that the merits of the action were not tried, and sets up his title to the property, the burden of proof is on him to prove his title; and if he shows a *prima facie* case, the other party may disprove it by showing that his title was acquired to hinder, delay or defraud the creditors of

33—80th Ill.

the defendant in the execution, and this whether the execution was issued on a valid or invalid judgment.

8. EVIDENCE—*files of replevin suit in suit on bond.* In a suit upon a replevin bond, the affidavit, declaration, writ and indorsements thereon, and other papers and files in the replevin suit, when identified, and the judgment, are admissible in evidence on behalf of the plaintiff.

9. PRACTICE IN SUPREME COURT—*every error will not reverse.* Trifling errors in the admission of immaterial evidence and in the giving of instructions which did not interfere with the substantial justice of the case, where justice is done by the verdict, will not be grounds of reversal

WRIT OF ERROR to the Circuit Court of Knox county; the Hon. ARTHUR A. SMITH, Judge, presiding.

Messrs. McCULLOCH, STEVENS & WILSON, and Messrs. COOPER & BASSETT, for the plaintiffs in error.

Mr. H. B. HOPKINS, Mr. T. CRATTY, and Mr. J. HOUGH, for the defendant in error.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

This was an action of debt, by John Earnest, coroner of Peoria county, who sues for the use, etc., against Joe H. Stevison, and David McKinney, his surety, on a replevin bond. The suit was commenced in Peoria county, whence the venue was changed to Knox county, in the circuit court of which county trial was had in March, 1873, resulting in a judgment in favor of the plaintiff for $9200 debt, and $5532.80 damages, and the record is brought here by the appeal of the defendants.

It appears that Mrs. Mary Chapman, wife of Joseph Chapman, was the owner of a large stock of millinery goods, then being in a rented room, in which she had been doing business in Peoria, which, on the first day of September, 1866, she bargained and sold to one Stevens, for the agreed price of $10,000. In part payment therefor Stevens conveyed to Mrs. Chapman a house and lot, valued at $2000, and paid her $1500 in cash, which he claims to have borrowed from his brother-in-law, Joe H. Stevison ; and for the remaining $6500 he gave her his judgment note, payable one day after date. By the agreement

of the parties, reduced to writing, and signed at the same time, the note was to be paid as follows: on the first of October following, one-half of the gross receipts of the sale of the goods up to that date; on the first day of December, two-thirds; on the first day of January, one-half; on the first day of April, one-third; on the first day of July, two-thirds; on the first day of September, one-third of the same; the same order and rate of payment to be observed from year to year until the note should be canceled.   It was also agreed the note should be secured by chattel mortgage on the goods; that Stevens should not otherwise pledge, mortgage or incumber the stock, and that he should sell only at the ordinary retail trade.   Judgment was not to be entered on the note unless Stevens should fail to keep Mrs. Chapman secured, as thereby provided, or to make the payments as thereby provided, or the goods should be claimed or attached by any person, or Stevens should be sued, or she should feel unsafe lest her claim should be lost or delayed. But on the occurrence of either of these events, judgment should be entered and execution issued.   It was further agreed that Mrs. Chapman should not engage in retail millinery business in Peoria as long as Stevens continued in it.

The chattel mortgage was executed, as provided by the agreement, but not recorded.

The October, November and December payments were made in conformity with the terms of the agreement, but on the 29th of December, Joe H. Stevison had taken possession of the entire stock, and claimed he owned it by virtue of a purchase from his brother-in-law, Stevens.   On the same day Mrs. Chapman caused judgment to be entered on the note, and execution to issue thereon; but, there being no seal to the execution, another execution was issued on the 31st of December, which was levied on the goods.   While the goods were in the custody of the sheriff, Stevison replevied them.   Mrs. Chapman then replevied them again, and Stevison thereafter re-replevied them. Subsequently, by agreement of the parties, the last two suits were dismissed, and the first suit only was left pending for trial.

At the January term, 1867, of the Peoria circuit court, Stevens moved to set aside the judgment by confession, urging in support thereof, that the note lacked his signature; that it was payable only according to the terms of the written contract, and that he was defrauded in the purchase of the goods, setting forth wherein.

The court ordered that Stevens be let in to plead, but that the lien of the judgment remain. The cause was then properly docketed for trial, and the plaintiff therein filed an amended declaration, counting upon the judgment note, contract, etc.; and the defendant therein filed pleas, setting up fraud in the sale of the goods, failure of consideration, etc. Issues were joined on the pleas, and the venue changed to Woodford county, where, at the April term, 1869, of the circuit court, trial was had and judgment given for the plaintiff in the cause for $5760. The judgment provided that the lien of the former judgment by confession, reserved by the order of the Peoria circuit court, in opening the judgment, stand in force as security for the amount.

The venue in the replevin suit, in favor of Stevison, against the sheriff, for the stock of goods, was changed to Woodford county, first, and afterwards to Marshall county. At the October term, 1869, of the circuit court of that county, the cause was dismissed for non-compliance with a previous order of the court, requiring the plaintiff to give security for costs, and the property ordered to be returned.

This suit is upon the replevin bond executed in that suit.

The defendant's pleas, upon which issues were joined and trial had, were, 1st, *non est factum;* 2d, *nul tiel record,* as to the record and proceedings in the replevin suit set out in the declaration; 3d, that the merits of the case were not tried in the replevin suit, but that it was dismissed for failure to give security for costs, and that at the time of the commencement of the suit, the property and right of possession of the goods were in the defendant, Stevison.

Upon the trial, plaintiffs read in evidence, against the defendant's objections, the original affidavit, declaration, writ,

indorsement thereon, transcript of Peoria circuit court on change of venue to Woodford county, transcript of Woodford circuit court on change of venue to Marshall county, together with the file marks on the several papers, in the replevin suit; and also certified transcript of the proceedings and judgment in that cause in the Marshall circuit court. Parol evidence was given identifying the several papers to be what they purported. It is contended this was error; that these loose papers can not be regarded as any part of the record, but only the material from which the record is made up, and that the records being in a different court from that in which the trial was had, evidence of them could only be given by transcript, certified in conformity with the statute.

Our practice, with regard to the making of records of judgments, is different from that which obtained at common law. "The papers of a cause, when filed, under our statute, become a part of the record as fully as if copied into the record book of the court." *Harding* v. *Larkin et al.* 41 Ill. 423. "And transcripts of the record are made by copying the files and the orders of court, as entered of record by the clerk." *Schirmer* v. *The People*, 33 Ill. 282. The clerk is, indeed, prohibited by statute from making a complete record in a case, unless directed to do so by the court, or one of the parties. (Gross' Statutes of 1869, § 50.)

It is said, in books treating on evidence, that "the *record itself* is produced only when the cause is in the same court, whose record it is; or, when it is the subject of proceedings in a superior court." But this has reference to the ability of the court to compel the production of the record, and not to the question of its sufficiency as an instrument of evidence, if actually produced. The copy is receivable in evidence, not because it is better evidence than the original, but because it is presumed the original can not be obtained. It is contemplated, and such ought ever to be the fact, that the records of courts remain, permanently, in the places assigned by the law for their custody. It does not, logically, follow, however, that the records being obtained can not be used as instruments of

evidence, for the mere fact of obtaining them does not change that which is written in them. Whether they are where they ought to be, or elsewhere, they are records of the court, and neither anything more nor less than that. The *preservation* of such records is one thing—what they *prove*, quite a different thing. What end of justice can be subserved when the records of one court are actually present in another court, by refusing to receive them in evidence and requiring them to be returned to their proper custody, there to be copied, and then receiving the copy in evidence? The facts proved must be precisely the same, whether the originals or copies are read in evidence, and it must, therefore, be totally unimportant to the party against whom the evidence is offered, which it shall be. Suppose the presence of a witness to have been procured by fraud or violence, while the party thus procuring the attendance of the witness would be liable to severe punishment, surely that could not be urged against the *competency* of the witness! If it could not, why shall a record, although illegally taken from its proper place of custody and brought before the court, but otherwise free from suspicion, be held incompetent?

The conduct of the clerks, in thus permitting the records belonging to their offices to be withdrawn, is highly censurable; but we are of opinion the records were competent evidence for the purpose for which they were introduced, and, hence, that there was no error in permitting them to be read in evidence.

It is alleged in the declaration, in giving the termination of the replevin suit, " Said cause coming on for trial, it was considered and adjudged by said circuit court that said Stevison take nothing by his said writ, but that he and his pledges to prosecute be in mercy," etc.; and, further, that at the same time " the court awarded a return of said goods," etc., and gave judgment for the defendants therein, naming them, against the said Stevison, for one cent damages and costs of suit. The record read in evidence, after reciting that a previous order had been made requiring the plaintiff to give security for costs, and that motion to dismiss the suit for non-compliance with that

order had been made, proceeds, "It is ordered by the court that said motion be sustained, and that this cause be dismissed at the plaintiff's costs, and that a writ of *retorno habendo* issue herein. It is therefore considered by the court that the defendants have and recover of the said plaintiff their costs and charges in this behalf, by them expended, and that execution issue therefor."

It is insisted this is a material variance from the allegation in the declaration. What were the material facts to be alleged in this respect? Manifestly, the termination of the suit, and judgment for costs in the defendant's favor, and the order for the writ *retorno habendo*. It could not, for the purposes of the declaration on the bond, be important what led to that result, nor in what phraseology it was declared. Whenever an instrument in writing, or a record, is not the foundation of the action, a variance is not material, unless the discrepancy is so great as to amount to a strong probability that it can not be the instrument or record declared on. *Leidig* v. *Rawson*, 1 Scam. 272; *Hull* v. *Blaisdell*, id. 332; *Plumleigh* v. *Cook*, 13 Ill. 669; *Phelan* v. *Andrews*, 52 Ill. 486.

The objection can not be sustained.

It is next objected that the judgment on which the execution levied on the property was issued was void, and therefore the plaintiffs were entitled to recover but nominal damages. We are of opinion that the only issue before the jury was, whether Stevison was the owner of the property. By permitting the suit to be dismissed he lost all right to contest the plaintiff's claim to the property except that saved to him by the statute, which was to plead and prove his title to the property in mitigation of damages. Beyond this he could not contest the plaintiffs' title. He held the affirmative on that issue, and the burden was, consequently, on him to prove his title; and when he had proved a *prima facie* title, the plaintiff might disprove it by showing that it was acquired for the purpose of hindering, delaying or defrauding the creditors of Stevens. Plaintiff had, at least, sufficient interest in the pro-

perty for this purpose, whether the execution was issued on a valid or invalid judgment.

Numerous other objections are urged, which we deem it unnecessary to notice. We have carefully read and considered the voluminous mass of testimony in the record, and although there are several errors in the admission of immaterial evidence, and in the giving of instructions, they are not such as, in our opinion, interfere with the substantial justice of the case. We think the finding of the jury is right, and that justice is done by the verdict. We doubt, if the case were submitted to any number of additional juries, a different result would be obtained.

The judgment is affirmed.

*Judgment affirmed.*