# MICHAEL SHIELDS

## v.

# GUSTAV REIBE.

1. EXECUTORY CONTRACT OF SALE.—When the contract of sale is executory, and the vendor agrees to sell an article by a particular description, it is a condition precedent to his right to recover the price, that the article shall answer such description; and in this respect there is no difference between an agreement to sell by a particular description, and an agreement to sell by sample.

2. SALE BY SAMPLE.—In the case of a sale by sample, there is an implied undertaking, that the bulk shall be of the kind and quality of the sample, and it becomes a condition of the contract itself, but it is in no accurate sense a warranty.

3. EXAMINATION OF THE ARTICLE SOLD.—The purchaser is entitled to a reasonable time to examine the goods, after delivery, and the right to use so much of them as may be actually necessary to ascertain whether they answer the contract.

4. USE BY THE PURCHASER—RECOVERY OF VALUE OF GOODS.—Even if the purchaser, after discovering the defects, should appropriate the goods, without notice to the seller of such defects, that would not necessarily make him liable for the agreed price, but would afford evidence of a new contract upon a *quantum valebat*, so that in *indebitatus assumpsit* for the price, the buyer, even without notice of defects, or offer to return, may give evidence showing that the goods did not answer the description or sample.

5. EXECUTED CONTRACT—EXPRESS WARRANTY.—Where the parties, by their pleadings, treat the contract as an executed one, with an express warranty that the goods should be like the sample, the warranty is not a condition of the contract, but collateral to it; and unless there was fraud sufficient to avoid the contract, or a stipulation for return of the goods, the buyer could not, on discovering a breach of the warranty, rescind the sale, but must bring his action upon the warranty, or when sued in *indebitatus assumpsit*, may give evidence of the diminution in value of the goods.

6. NOTICE OF DEFECT.—Where the contract is treated as an executed one, and the buyer has no right to rescind the sale, a failure to give the seller notice of the defects within a reasonable time, although it may raise a presumption that the defects did not exist, yet it is not conclusive.

APPEAL from the County Court of Cook county, the Hon. MASON B. LOOMIS, Judge, presiding. Opinion filed January 4, 1882.

This action was *indebitatus assumpsit*, brought by Riebe,

Shields v. Reibe.

in the county court, against Shields, to recover the price of ten bags of choice Va. shelled peanuts. The defendant pleaded the general issue, and a special plea, which, after the formal part, averred, " that in consideration that said defendant would buy of the said plaintiff, at his request, *ten bags of choice Virginia shelled peanuts*, at a certain price, to-wit: eighty-one and 11-100 dollars, the said plaintiff undertook and promised to said defendant, to deliver to him, *the said ten bags of choice Virginia shelled peanuts*, and that the said peanuts should all be of like goodness and quality with certain samples thereof then and there shown by the plaintiff to the defendant; and defendant avers that thereupon he confided in said promises, and then and there bought of the plaintiff *the said ten bags of peanuts*, at the agreed price aforesaid, and the said plaintiff afterwards, to-wit., at the time aforesaid, delivered to the defendant ten bags of peanuts, as and for peanuts of like quality and goodness as the sample so as aforesaid shown to the defendant; yet the plaintiff did not regard his several promises, but thereby deceived and defrauded the defendant, in this, to-wit., that the said peanuts so as aforesaid delivered to the defendant, at the time of the delivery thereof, were not of like goodness and quality with the samples aforesaid, but, on the contrary, they were of quality inferior in goodness and quality to said samples, so as aforesaid shown to the defendant, and were who ly rotten, spoiled, unsaleable and valueless, and this, etc." The plaintiff replied double.

1st. " That the peanuts so as aforesaid delivered by said plaintiff to said defendant, were of the same quality as the samples thereof shown by the plaintiff to the defendant," concluding to the country.

2d. " That the said defendant, after the delivery of said peanuts to him as aforesaid, accepted and received the same as a compliance with the terms of sale thereof by said plaintiff to said defendant, as set forth in said additional plea." Concluding with a verification. To this last the defendant rejoined traversing the acceptance, and concluding to the country. The case was tried before the court and a jury. The plaintiff gave evidence tending to show that in the early part of Janu-

ary, 1881, he called upon the defendant with a sample of peanuts; that the same were of good quality; that he contracted to sell, and defendant to buy, ten bags of peanuts of like quality as the sample, to be delivered on arrival at depot in Chicago, to be paid for by defendant at the rate of 5 and $\frac{4}{8}$ cents per pound, in thirty days from the 1st day of February next following; that on the 24th of January, 1881, there arrived for plaintiff at such depot, fifty bags of peanuts, and on that day plaintiff examined about eight bags promiscuously, in the mass of fifty bags; that on the same day he gave defendant an order on the railroad company for ten bags of said peanuts; that the other forty bags were sold by plaintiff to other parties, but when they were selected, and taken away, does not appear; that about February 6, 1881, plaintiff called at defendant's store to get the weight of the ten bags sold to him; that the weight was given him, and was 1,442 pounds; that defendant had received the peanuts some two or three days prior to that time. Evidence was given by the defendant tending to show, that when the peanuts were received, they were immediately taken into the upper floor of defendant's store—a dry place; that some eight or ten days after they were received, they were examined and found not to correspond with the sample, but were spoiled, matted together and wholly unsalable and unfit for use; and that as soon as their condition was discovered, notice thereof was given by defendant to plaintiff, and that defendant could not accept them.

The court, at the request of plaintiff's counsel, instructed the jury as follows: "The jury are instructed as a matter of law, that in a sale of goods by sample, the seller is entitled to reasonable notice of any defect in the quality of the goods delivered, and that it is the duty of the purchaser to give reasonable and timely notice that the goods are not equal in quality to the sample.

"If the jury believe from the evidence, that the plaintiff sold the defendant certain peanuts by sample, and afterwards delivered to defendant peanuts on such sale, it thereupon became the duty of the defendant to examine the goods so delivered within a reasonable time, and, if the goods were not

equal to the sample, within a reasonable time, give notice thereof to said plaintiff."

The jury found the issues for the plaintiff, and assessed his damages at eighty-one dollars and eleven cents. The defendant made a motion to set aside the verdict, and for a new trial, which the court overruled, and gave judgment on the verdict, from which the defendant prosecutes this appeal.

Messrs. Buell & Davis, for appellant.

Messrs. Bonney, Fay & Griggs, for appellee; that when the purchaser received from the seller a railroad delivery ticket for the goods, they passed from the control of the seller, and became the property of the buyer, cited Webster v. Granger, 78 Ill. 230.

There should be an examination of the goods within a reasonable time after their delivery: Ellis v. Roche, 73 Ill. 282.

McAllister, J. This is a peanut case, and, as regards the subject matter and amount, is rather paltry; but, as regards the questions of commercial law involved, it is somewhat important.

The substance of the transactions between the parties, as shown by the evidence, was, that in the early part of January, 1881, they made an agreement, by which the plaintiff was to sell, according to a sample then shown, to defendant, a quantity, being ten unascertained bags of Virginia shelled peanuts, and to deliver the same on arrival at railroad depot in Chicago; but defendant not to be obliged to take them before the first of the then next February; and was to pay for them, at the rate of five and five-eighths cents per pound, in thirty days from said 1st day of February. January 24th, 1881, there came to such depot, for plaintiff, fifty bags of peanuts, forty of which he sold to other parties, and thereupon gave defendant a delivery order on the railroad for ten. Early in the succeeding February, defendant took from said depot ten bags, without examination; had them brought to his store, and put in a dry place. Some eight or ten days thereafter, the contents of the bags were examined, and the nuts were found to be partly rot-

ten, all spoiled, matted together and worthless. Immediately upon such discovery, defendant notified plaintiff of the condition of the goods, and that he could not take them. Upon these facts, the plaintiff was not entitled to recover the price, for the reason that the contract amounted to a mere executory contract for a sale of goods, to be of a particular description and quality, and when offered or delivered, they were not of such quality, if of the description, and reasonable notice was given by the buyer to the seller of such defect.

When the contract of sale is executory, and the vendor agrees to sell an article by a particular description as to kind and quality, it is a condition precedent to his right to recover of the buyer the price that the thing which he offers to deliver, or which he has delivered, shall answer such description; and there is no difference, in that respect, between such agreement to sell by a particular description, and an executory agreement to sell by sample. In the latter case there is an implied undertaking that the bulk shall be of the kind and quality of the sample; and it becomes a condition of the contract itself, a performance of which is precedent to any obligation on the part of the buyer to pay the price; but is, in no accurate sense, a warranty. Chanter v. Hopkins, 4 Mees. & Welsb. 404; Gompertz v. Bartlett, 2 Ellis & B. 849; Lucy v. Mouflet, 5 H. & N. 229; Foster v. Smith, 18 C. B. 156; Osborne v. Gatz, 60 N. Y. 540; Howard v. Hoey, 23 Wend. 350; Street v. Blay, 2 Barn & Adol. 456.

In such case there is an implied undertaking on the part of the seller, that the buyer shall have a fair opportunity to examine the goods. Lorymer v. Smith, 1 B. & C. 1; and is entitled to a reasonable time, and the right to use so much of the goods as may be actually necessary to ascertain whether they answer the contract. Street v. Blay, 2 Barn. & Adol. *supra;* Poulton v. Lattimore, 9 B. & C. 259.

Even if the buyer, after discovering the defects, should appropriate the article, without notice to the seller of such defects, that would not necessarily make him liable for the agreed price, as such, but would afford evidence of a new contract upon a *quantum valebat.* Mondel v. Steel, 8 Mees. & Welsb. 858; Doane v. Dunham, 65 Ill. 512.

So that, in *indebitatus assumpsit*, for the price, brought by the seller, as in this case, the buyer, even where he has given the seller no notice of the defects, or offered to return the goods, may give in evidence the diminution in value, on account of the goods not answering to the description or not corresponding with the sample; and if they be in fact worthless, defeat the action. If reasonable notice has been given, and the price has been paid, the buyer may recover it back in an action for money had and received. These propositions are sustained by the above authorities.

But this case has been wrenched out of its proper relations upon the real facts, by the defendant having put in a special plea, in which he sets out what he avers to have been the contract between the parties; and in setting it out, he omits every element which constituted it an executory contract for a sale, by sample, of unascertained goods, but gives it as a sale of specific goods, with an express warranty that the goods should be of like quality and goodness as a sample then and there exhibited, averring that the goods delivered at the time of delivery, were not of like quality and goodness with the sample, but were rotten, spoiled and wholly valueless.

The plaintiff put in two replications to this plea, in neither of which did he deny that the contract was, as set out in the plea, and thereby conclusively admitted it. Simmons v. Jenkins, 75 Ill. 479. By his first replication he impliedly, and on the same principle, admitted that the goods, when delivered, were rotten, spoiled and worthless, but averred that they corresponded with the sample. The second replication avers acceptance of the goods, by defendant. As the contract was set out, that tendered a mere immaterial issue.

By the contract as set out, it was a sale of a specific lot of peanuts, by which the property in the goods would pass to and be vested in the defendant, although the sale was by sample. Dawson v. Collis, 10 C. B. 523. And therefore the express warranty would not be a condition of the sale itself, but collateral to the express object of it. In such case it is the settled law of England and of nearly every State in this country, except Massachusetts and Maryland, and perhaps one or

two other States, that unless there was fraud in the contract, which would avoid it, or a stipulation for a return of the goods, the buyer could not, on discovering a breach of such a warranty, rescind the sale by giving notice to the seller and offering to return the article sold. This doctrine arises from the distinction, in substance, between an executory contract for a sale where the property does not pass; but the undertaking, as to kind and quality, is a condition of the contract itself, a performance of which must be precedent to any obligation on the part of the buyer, and a sale of a specific article or lot of goods, which immediately vests the property in the buyer; in which case, there being opportunity to examine, the maxim *caveat emptor* applies.

If in the latter case there be a warranty as to quality, then, although to be effectual it must be a part of the contract, yet it is regarded as so far collateral to the express object of such contract as not to constitute a condition precedent that the goods shall answer the warranty.

For that reason the buyer cannot by his sole act rescind the contract for a breach of the warranty, so that no action will lie for the price, but must bring his cross-action upon the warranty; or if sued by the seller in *indebitatus assumpsit*, he may give the diminution of value in evidence; or if the goods be worthless, defeat the action altogether by recouping his damages; and to do so there is no occasion even to give notice to the seller of a breach of the warranty. Comstock, J. in Muller v. Eno, 4 Kernan, 602; Hye Manufacturing Co. v. Gardner, 10 Cush. 88; Kellogg v. Denslow, 14 Conn. 411; Osborne v. Fuller, Ib. 529; Waring v. Mason, 18 Wend. 425; Carter v. Stennet, 10 B. Mon. 250.

Although it is held, in some cases, that the fact of not giving notice will raise a strong presumption against the buyer; that the goods, at the time of the sale, had not the defect complained of. Fielder v. Starkin, H. Bl. 17; Boorman v. Jenkins, 12 Wend. 566; Poulton v. Lattimore, *supra;* Thornton v. Wynn, 12 Wheat. 183. That, however, affects only the *quantum* of evidence in proving the defect, if the rule be a sound one.

The court below instructed the jury that it was the duty of defendant to give plaintiff timely and reasonable notice of the defect complained of. As the issues were, this was erroneous. We are further of opinion, that the court erred in not granting defendant's motion for a new trial. As the issues stood, the verdict allowing plaintiff the full price of the goods was manifestly against the weight of the evidence. For the reasons indicated, the judgment will be reversed and the cause remanded.

Reversed and remanded.